IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| LBG OGDEN FIVE POINTS d/b/a WESTERRA REALTY & MANAGEMENT and CINCINNATI INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>RIDLEY'S FAMILY MARKETS and LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 1:21-CV-125-TS-DBP<br><br>Judge Ted Stewart |

Plaintiffs seek declaratory and other relief regarding Defendants' duty to defend and indemnify them in a state-court personal injury action. Defendants move to dismiss on the basis that the claims are non-justiciable. For the reasons below, the motion will be granted.

I.   BACKGROUND

Plaintiff LBG Ogden Five Points LLC d/b/a Westerra Realty & Management ("Westerra") owns a commercial property in Ogden, Utah (the "property"). Defendant Ridley's Family Markets, Inc. ("Ridley's") leased the property from Westerra at all relevant times. The lease required Ridley's to maintain the property.[1] It also required Ridley's to indemnify Westerra against claims arising from Ridley's use of the property and waive all claims against Westerra, except those that

---

[1] Lease ¶ 5, Docket No. 2-1 at 21.

1

might result from Westerra's negligence.[2] The lease required Ridley's to obtain insurance covering Westerra with a limit of insurance for bodily injury of at least $100,000.[3]

Ridley's procured a policy with Defendant Liberty Mutual Fire Insurance ("Liberty") in its own name.[4] Liberty later acknowledged that the policy covered Westerra as a lessor.[5] As of April 2017, the policy declarations showed a limit of insurance for personal injury of $1,000,000.[6]

In August 2020, a Ms. Linford filed a state-court action alleging that she was injured in the property's parking lot in June 2017 when she tripped over an unpainted speedbump.[7] Linford sued the property's owner (Westerra) and its lessee (Ridley's), among others.

Westerra tendered its defense to Ridley's in November 2020 and to Liberty a few months later, in March 2021.[8] On May 26, 2021, Liberty sent a letter accepting the tender and the duty to defend subject to a reservation of rights.[9] The letter acknowledged provisions of Liberty's commercial liability policy requiring it to "pay those sums that the insured becomes legally obligated to pay as damages because of [an injury] . . . to which this insurance applies," up to the policy's limits of insurance.[10] It also acknowledged that Liberty had "the right and duty to defend the insured against any 'suit' seeking those damages," which duty would end when it had paid covered judgments or settlements up to the applicable limits of insurance.[11]

---

[2] Lease ¶ 16, Docket No. 2-1 at 23.

[3] Lease ¶ 16, Docket No. 2-1 at 24.

[4] Docket No. 2-1 at 41.

[5] *Id.* at 45–50.

[6] *Id.* at 41.

[7] Civil No. 200904767, Second Judicial District Court, Ogden, Utah.

[8] Compl. ¶¶ 24–25, Docket No. 2-1 at 9.

[9] Docket No. 2-1 at 45–50.

[10] *Id.* at 46.

[11] *Id.*

The letter then listed aspects of the lawsuit that the policy might not cover. As relevant here, the letter asserted that the limit of insurance available to Westerra was $100,000.[12] The letter pointed to one of the policy endorsements stating that coverage for additional insureds "shall conform to" the written agreement obligating the named insured to procure coverage for the additional insured.[13] The letter asserted that because the lease required Ridley's to procure insurance for Westerra with a limit of at least $100,000, Westerra was entitled to only that amount in coverage.[14] The letter also stated that coverage was subject to a $25,000 deductible.[15]

Westerra and its insurer, Cincinnati Insurance Co. (collectively "Plaintiffs"), disagree with the $100,000 limit of insurance stated in Liberty's letter, believing Westerra is entitled to the policy declarations' stated limit of $1,000,000.[16] They also disagree about the $25,000 deductible.[17] Westerra appears to have refused to accept Liberty's defense on these terms[18] and instead filed an action in state court on August 6, 2021 seeking declaratory relief.[19] Plaintiffs also claimed damages arising from Liberty's alleged "bad faith insurance practices."[20] Ridley's and Liberty (collectively "Defendants") removed the case to federal court, where they filed this motion to dismiss for lack of justiciability.[21]

---

[12] *Id.* at 49.

[13] *Id.* at 48–49.

[14] *Id.* at 49.

[15] *Id.*

[16] Compl. ¶ 28, Docket No. 2-1 at 10.

[17] Compl. ¶ 29, Docket No. 2-1 at 10.

[18] Compl. ¶ 35, Docket No. 2-1 at 11 ("Cincinnati is currently paying the costs of the defense of Westerra."); *see also* Resp. at 5 n.1, Docket No. 22 ("Westerra refused the defense on [Liberty's] terms.").

[19] Compl., Notice of Removal Ex. A, Docket No. 2-1; Notice of Removal, Docket No. 2 at 2 ¶ 1.

[20] Compl. ¶¶ 45–51, Docket No. 2-1 at 13–14.

[21] Notice of Removal, Docket No. 2; Mot., Docket No. 21.

3

II.     LEGAL STANDARD

Justiciability challenges are challenges to subject-matter jurisdiction properly analyzed under Federal Rule of Civil Procedure 12(b)(1).[22] A Rule 12(b)(1) motion may take one of two forms. First, a party may bring a facial attack, which "looks only to the factual allegations of the complaint in challenging the court's jurisdiction."[23] Alternatively, a party may bring a factual attack, which "goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction."[24] Where, as here, Defendants present a facial challenge, the court applies the standard applicable to motions under 12(b)(6).[25]

When evaluating a complaint under Rule 12(b)(6), the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[26] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[27] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[28] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[29]

---

[22] *See Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004) ("[J]usticiability implicates this court's jurisdiction.").

[23] *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n. 1 (10th Cir. 2010).

[24] *Id.*

[25] *Id.*

[26] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[29] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[30] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[31] The court may also consider other documents "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[32]

### III. DISCUSSION

Defendants move to dismiss for lack of justiciability arguing that Plaintiffs' claims are unripe.[33] Defendants point out that the state-court action has not established Westerra's liability and might never do so. Plaintiffs respond that there is nevertheless a live dispute about the amount of coverage and the terms under which Liberty should defend Westerra.[34]

The court makes several general observations at the outset. First, insurance contracts commonly give insurers both the right and the duty to defend the insured in a lawsuit where the policy potentially covers the claims. Under Utah law, "[a]n insurer's duty to defend a lawsuit against its insured is both separate and distinct from the insurer's duty to indemnify its insured for liability that is imposed against the insured after trial."[35] The duty to defend arises when there is a claim against an insured that could potentially lead to recovery under the policy, whether or not

---

[30] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[31] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[32] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[33] Docket No. 21.

[34] Docket No. 22.

[35] *Aspen Specialty Ins. Co. v. Utah Local Gov'ts Tr.*, 954 F. Supp. 2d 1311, 1315 (D. Utah 2013) (internal quotation marks and citation omitted); *see generally Owners Ins. Co. v. Dockstader*, 861 F. App'x 210, 214 (10th Cir. 2021) (unpublished); Duty to Defend Distinguished from Duty to Pay on Policy and Duty to Defend Versus Duty to Pay in Third-Party Liability Cases, 16A Couch on Ins. §§ 200:3, 227:27 (3d ed.).

the insured is ultimately held liable.[36] Thus, a duty to defend arises before a duty to indemnify and is broader in scope.[37] The language of the policy governs the scope of these duties.[38]

Because the duty to defend arises before liability is decided, insurers commonly defend under a "reservation of rights" to dispute coverage later.[39] This allows the insurer to fulfil its duty to defend a potentially covered claim without subjecting itself to waiver and estoppel on the coverage issue. Reservation of rights letters also put the insured on notice of conflicts of interest so the insured can take steps to protect its own interests.[40] Utah law does not say whether an insured who objects to an insurer's reservation of rights may reject the insurer's defense, but this is generally disfavored as it deprives the insurer of its own right to defend.[41]

A. Declaratory Judgment (Claim One)

Plaintiffs seek declarations that (1) Ridley's must defend and indemnify Westerra; (2) Westerra is entitled to $1,000,000 in limits of insurance under the Liberty policy; (3) Liberty's duty to indemnify Westerra is not subject to a $25,000 deductible payment; and (4) Plaintiffs are

---

[36] *Fire Ins. Exch. v. Therkelsen*, 2001 UT 48, ¶¶ 21–22, 27 P.3d 555.

[37] *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997) ("[A]n insurer's duty to defend is broader than its duty to indemnify. Its defense duty arises when the insurer ascertains facts giving rise to potential liability under the insurance policy.").

[38] *Fire Ins. Exch.*, 2001 UT 48, ¶¶ 14, 22.

[39] *See generally State Farm Mut. Auto Ins. Co. v. Kay*, 487 P.2d 852, 854 (Utah 1971) ("[Q]uite often an insurer is faced with a dilemma as to whether to defend or refuse to defend. . . . [I]n cases of doubt, the insurer [can] (1) seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights."), *overruled on other grounds by Farmers Ins. Exch. v. Call*, 712 P.2d 231 (Utah 1985).

[40] *See* 1 Ins. Claims & Disputes § 2:14 (6th ed.).

[41] Restatement of the Law of Liability Insurance §§ 10, 15 cmt e (2019); 1 Ins. Claims & Disputes § 2:17 ("[I]f an insurance company provides a defense that does not breach its duty to defend, it cannot later be precluded from relying on any of the defenses it reserved, regardless of whether the insured protested that it did not accept those reservations. As a result, an insured is always presented with the following choice when the proffered defense satisfies the carrier's contractual obligations: the insured can either accept the defense offered, or reject it and forfeit insurance coverage."); 1 Practical Tools for Handling Ins. Cases § 2:17.

entitled to reimbursement for defense costs and fees paid to date from the date of claim.[42] Defendants argue that these issues are unripe and, as a result, nonjusticiable. The court agrees that these matters are unripe or otherwise unfit for judicial resolution.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" or "controversies." A "case or controversy" is a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests . . . [and] admitting of specific relief through a decree of a conclusive character."[43] The "case or controversy" requirement is vague,[44] but at a minimum it requires an active dispute that has consequences in the real world.[45] Ripeness is a subcategory of justiciability that "aims to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[46] Courts determining ripeness look at "(1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of withholding judicial consideration."[47] "A case meets the first prong if it does not involve uncertain or contingent events that may not occur at all (or may not occur as anticipated). The second prong addresses whether the challenged action is a direct and immediate dilemma for the parties."[48]

---

[42] Compl. at 13, Docket No. 2-1 at 14.

[43] *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937).

[44] *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) ("Unfortunately, there is no formula to determine in every dispute whether the Article III 'Case or Controversy' requirement has been satisfied.").

[45] *Id.* at 1380 ("[G]enerally one cannot bring a declaratory-judgment action just to resolve one isolated issue in a possible future controversy. A declaratory judgment that would not have practical consequences without later additional litigation is not proper.").

[46] *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1275 (10th Cir. 2012) (internal quotation marks and citation omitted).

[47] *Id.* (internal quotation marks and citation omitted).

[48] *Id.* (internal quotation marks and citation omitted).

7

Federal courts sitting in diversity apply the federal Declaratory Judgment Act.[49] Mirroring Article III's justiciability requirement, the Declaratory Judgment Act confines the remedy to a "case of actual controversy."[50] "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[51] "The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."[52] In a justiciable declaratory judgment action, there is generally a clearly defined and ongoing dispute about a claimed legal obligation at the time the case is brought, and a declaratory judgment has the immediate practical effect of guiding the parties' behavior and preventing further adversarial proceedings.[53]

---

[49] 28 U.S.C. § 2201; *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (stating that federal courts in diversity actions generally apply state substantive law and federal procedural law); *Farmers All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978) (explaining that declaratory judgment actions are procedural in nature); *cf. U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192-JWL, 2006 WL 1007099, at *2 (D. Kan. Apr. 14, 2006) ("[F]ederal standards govern this court's determination of the propriety of declaratory relief.").

[50] 28 U.S.C. § 2201; *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989).

[51] *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008).

[52] *Pub. Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 244 (1952).

[53] *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (explaining that a "case or controversy" existed where patent licensee sought declaration that patent was invalid, thereby allowing licensee to halt payments without fear of treble damages if the patent holder were to sue and the patent were upheld); *Aetna*, 300 U.S. 227 (explaining that there was a "case or controversy" where an insurer sought a declaratory judgment on its liability for a denied claim); *Kunkel*, 866 F.2d at 1275 (explaining that the indemnification duty was justiciable where settlement negotiations in the underlying lawsuit could not proceed without resolution of the issue).

The Tenth Circuit provides guidance on the justiciability of disputes about insurers' duties to defend and indemnify.[54] As to the duty to defend, controversies are ripe for declaratory relief at least when the contractual duty to defend has arisen under state law[55]—in Utah, where there is a potentially covered claim against the insured.[56] As to the duty to indemnify, the Tenth Circuit takes a pragmatic approach, asking whether resolution would concretely benefit the parties.[57] Where the existence of a duty to indemnify is wholly "contingent on future events, which have not and may never take place," there is no justiciable controversy.[58] However, even a contingent or hypothetical dispute can be ripe where "circumstances reveal a need for present adjudication."[59]

Determining that there is a justiciable controversy supporting the exercise of subject-matter jurisdiction is not the end of the inquiry. Jurisdiction under the Declaratory Judgment Act is

---

[54] *See generally Columbian Fin. Corp.*, 650 F.3d at 1376–81 (summarizing the Supreme Court's declaratory judgment justiciability decisions).

[55] *See, e.g.*, *Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC*, 451 F. App'x 745, 747–48 (10th Cir. 2011) (unpublished) (analyzing ripeness of duty to defend by examining when the duty to defend arises under Oklahoma law).

[56] *Fire Ins. Exch.*, 2001 UT 48, ¶¶ 21–22.

[57] *Kunkel*, 866 F.2d at 1274; *see also Surefoot*, 531 F.3d at 1242 (explaining that determining the justiciability of a declaratory judgment action requires focusing "on the underlying facts, assessing whether they suggest an extant controversy between the parties or whether instead they merely call on us to supply an advisory opinion about a hypothetical dispute").

[58] *Canal Ins. Co. v. Montello, Inc.*, 632 F. App'x 448, 457 (10th Cir. 2015) (unpublished) (upholding dismissal of action where question of whether excess insurance policy applied was purely hypothetical until primary insurance was exhausted) (internal quotation marks and citation omitted).

[59] *Allendale Mut. Ins. Co. v. Kaiser Eng'rs*, 804 F.2d 592, 594 (10th Cir. 1986) (explaining that the running of a statute of limitations on a subrogation claim created a need for immediate adjudication of rights and duties even though they were contingent on the outcome of an underlying appeal); *see also Kunkel*, 866 F.2d at 1273–75 (finding indemnification issue justiciable where settlement of underlying litigation had stalled over indemnification disagreement); *Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 185 F.3d 875, at *14 (10th Cir. 1999) (unpublished table decision) (finding that question of insurer's duty to indemnify was justiciable despite contingencies including whether liability would be established and in what amount); *U.S. Fire Ins. Co.*, 2006 WL 1007099, at * 2–3 (rejecting argument that lack of judgment in underlying case rendered claim for declaratory judgment on indemnification unripe); *cf. Essex Ins. Co. v. Sheppard & Sons Constr., Inc.*, No. CIV-12-1022-D, 2015 WL 4251073, at *5 (W.D. Okla. July 13, 2015) (distinguishing non-justiciable controversy over coverage from justiciable dispute in *Kunkel* because there was no actual settlement impasse).

discretionary, not mandatory.[60] The factors to consider in deciding whether to entertain an action (the "*Mhoon* factors") are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[61]

In sum, a court evaluating a justiciability challenge on a motion to dismiss a declaratory judgment action proceeds in two steps.[62] First, the court determines whether the factual allegations of the complaint show a justiciable controversy supporting jurisdiction.[63] If jurisdiction is lacking, the court cannot hear the case.[64] If jurisdiction exists, the court makes a fact-specific determination as to whether it should refrain from exercising that jurisdiction.[65]

1. Ridley's duties to defend and indemnify

First, Plaintiffs seek a declaration that the lease obliges Ridley's to defend and indemnify Westerra. Defendants argue that this is unripe because these obligations are contingent on a finding of liability in the underlying state action.[66] As explained, that contingency alone does not render the issues non-justiciable. However, Defendants are correct that declaratory relief is not warranted.

---

[60] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994).

[61] *Id.* at 983 (internal quotation marks and citation omitted).

[62] *Kunkel*, 866 F.2d at 1273.

[63] *Id.*; *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir. 1971).

[64] Fed. R. Civ. P. 12(h)(3) (requiring dismissal if "the court determines at any time that it lacks subject matter jurisdiction").

[65] *Surefoot LC*, 531 F.3d at 1240; *Kunkel*, 866 F.2d at 1273.

[66] Docket No. 21 at 7–8.

As to Ridley's defense obligation, even if the issue were ripe, the court would decline jurisdiction under the first two *Mhoon* factors. The complaint does not show any disagreement between Ridley's and Defendants on this issue. It does not say how Ridley's responded to Westerra's tender of its defense; the reasonable inference is that Ridley's is not currently defending Westerra because it expects Liberty to do so pursuant to the policy Ridley's purchased for that purpose, not because Ridley's disputes its own obligation. Thus, it is unclear how a declaration that Ridley's owes a duty to defend would aid the parties.

As to Ridley's indemnification duties, a dispute would be unripe because liability has not been established and there are no other circumstances that would counsel immediate adjudication. The court would also decline to exercise jurisdiction under the first two *Mhoon* factors because the complaint pleads no disagreement about Ridley's indemnification duty, let alone one whose resolution would aid the parties.

In their response, Plaintiffs make conclusory statements that the indemnification issue presents "uncertainty" that a declaratory judgment would resolve. Mere uncertainty does not give rise to a justiciable controversy; a declaration that resolved "uncertainty" about an abstract obligation would be an improper advisory opinion. Plaintiffs also argue that a declaratory judgment on indemnification would avoid protracted litigation after resolution of the underlying action. But the underlying action might clear Westerra of liability, rendering such a declaration useless. Without any facts suggesting a need for immediate adjudication, the possibility of future litigation does not render a dispute justiciable.

Finally, Plaintiffs devote one sentence to arguing that resolution of the issues will make the case more likely to settle should the parties mediate.[67] Nothing in the complaint indicates that

---

[67] *Id.* at 6.

11

settlement discussions are ongoing or that they would hinge on this issue. That distinguishes this case from *Kunkel*, where the Tenth Circuit upheld the exercise of jurisdiction where settlement negotiations had ground to a halt over the very issue on which declaratory relief was sought.[68] In short, the possibility that information will be useful later does not transform a question into a justiciable controversy or convince the court that judicial resolution would be prudent.

2. Limits of insurance and deductible

Plaintiffs seek a declaration that the applicable limit of insurance under the policy is $1,000,000 instead of $100,000 and that the $25,000 deductible does not apply. These are abstract disagreements. The limit of insurance and the deductible relate to the duty to indemnify, which has not yet arisen and might never arise. Liberty's duty to defend does not depend on resolution of indemnification issues; indeed, one purpose of a reservation of rights letter is to allow the insurer to participate in the defense *despite* such disagreements. Plaintiffs' arguments in opposition—that there is "uncertainty," that declarations could avoid litigation when the underlying suit is resolved, and that declarations might aid settlement—fail for the reasons above. The issues are not ripe and the court would decline to exercise jurisdiction if it existed.

3. Reimbursement for defense costs

Finally, Plaintiffs assert that they are entitled to reimbursement of defense costs and fees paid to date. Liberty does not dispute its duty to defend as of the date Westerra tendered its defense and there is no suggestion that Liberty is opposed to reimbursing Plaintiffs from that date forward. The only dispute appears to be whether Liberty must reimburse Plaintiffs for legal fees incurred between the date of the underlying state-court action and the date of Westerra's tender.

---

[68] *Kunkel*, 866 F.2d at 1275; *see also Cf. Essex Ins. Co. v. Sheppard & Sons Constr., Inc.*, No. CIV-12-1022-D, 2015 WL 4251073, at *5 (W.D. Okla. July 13, 2015) (distinguishing non-justiciable controversy over coverage from *Kunkel* because there was no actual settlement impasse).

Even if this dispute were ripe, the court would decline to exercise jurisdiction under the fifth *Mhoon* factor. The question of whether Liberty must reimburse Westerra for a few months of legal fees incurred a year ago is simply not the type of dispute the Declaratory Judgment Act contemplates. Traditionally, declaratory judgments sought to clarify legal relations to prevent future harm, not to remedy past wrongs.[69] A claim for reimbursement is retrospective; when uncoupled from any other well-pleaded declaratory judgment claim, it is better framed as breach of contract or unjust enrichment, allowing a plaintiff to obtain an order for payment rather than a non-coercive declaration.[70]

In sum, because Plaintiffs plead no controversy that is both justiciable and a justifiable exercise of the court's discretion, the court will dismiss Claim One.

B. Bad Faith (Claim Two)

Plaintiffs seek damages for bad faith for Liberty's statement that the limit of insurance available to Westerra was $100,000, which Plaintiffs contend was a misrepresentation.[71] Defendants argue that this claim is unripe because it is premised on Liberty's future breach of the duty to indemnify.[72] Plaintiffs' bad faith claim does not hinge on Liberty's future failure to indemnify Westerra; rather, Plaintiffs complain that the statements in Liberty's letter themselves amounted to bad faith.

---

[69] *See. Scarborough v. LaSalle Bank*, No. 2:10–cv–0624–CW, 2011 WL 1549432, at *3 n.3 (D. Utah Apr. 21, 2011) (quoting *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010)).

[70] *See, e.g.*, *N. River Ins. Co. v. Leffingwell Ag Sales Co., Inc.*, No. CV–F–10–2007 LJO MJS, 2011 WL 304579, at *4–5 (E.D. Cal. Jan 27, 2011) (citing *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1113 (9th Cir. 2001)).

[71] Compl. ¶ 50, Docket No. 2-1 at 13.

[72] Mot. at 4–6.

Notwithstanding Defendants' unavailing argument on justiciability, the court will dismiss the bad faith claim for failure to state a claim under Rule 12(b)(6). "A claim for breach of the covenant of good faith and fair dealing is a derivative of [a] breach of contract claim"[73] and "a violation of that duty gives rise to a claim for breach of contract."[74] In Utah, a claim for bad faith in the insurance context is "the inverse of the implied covenant of good faith and fair dealing that inheres in all insurance contracts."[75] The covenant implies a duty "not to intentionally or purposely do anything [that] will destroy or injure the other party's right to receive the fruits of the contract and to . . . act consistently with the agreed common purpose and the justified expectations of the other party."[76] As with the implied covenant in general, reasonableness is the measure of appropriate conduct in insurance dealings.[77]

The complaint fails to allege that Liberty's statements were unreasonable or otherwise in bad faith. "Reservation of rights letters have long been regarded as proper defense mechanisms for insurance companies."[78] Even insurers who reserve meritless coverage defenses are not considered to have breached their obligations.[79] Liberty's letter quotes policy provisions that can reasonably—even if erroneously—be interpreted to support its position that the limit of insurance available to

---

[73] *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 19, 342 P.3d 224.

[74] *Beck v. Farmers Ins. Exch*., 701 P.2d 795, 798 (Utah 1985); *see generally Fire Ins. Exch. v. Oltmanns*, 2018 UT 10, ¶¶ 24–65, 416 P.3d 1148 (Durham, J., concurring-in-part).

[75] *U.S. Fid. v. U.S. Sports Specialty*, 2012 UT 3, ¶ 20, 270 P.3d 464 (citing *Beck*, 701 P.2d at 798, 801).

[76] *Id.* (internal quotation marks and citation omitted) (alteration in original).

[77] *Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Centers, Inc.*, 889 P.2d 445, 451 (Utah Ct. App. 1994) (citing *In re Vryonis*, 202 Cal. App. 3d 712, 248 Ca. Rptr. 807, 812 (Div. 3 1988) (explaining that the essence of covenant of good faith and fair dealing is objectively reasonable conduct)); *see also* 1 Prac. Tools for Handling Ins. Cases § 7:6 ("An insurance company acts in good faith where it acts honestly, on adequate information, and does not place paramount importance on its own interest.").

[78] *Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*, 21 A.3d 1151, 1162 (N.J. 2011).

[79] 1 Ins. Claims & Disputes §§ 2:7, 2:15.

Westerra is $100,000. Furthermore, there is no apparent harm to Plaintiffs from the alleged misrepresentations.[80] Westerra's right to indemnification cannot have been harmed by these statements because the duty to indemnify has not yet arisen. Westerra's right to receive a defense was also unaffected as Liberty accepted Westerra's tender.[81] Plaintiffs' continuing legal expenses are due not to Defendants' conduct but to Plaintiffs' refusal of the defense based on an apparently mistaken belief that accepting the defense required acquiescing to Liberty's coverage positions.

Because Plaintiffs fail to state a claim for bad faith, the court will grant Defendants' motion as to this claim.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 21) is GRANTED.

DATED this 12th day of January, 2022.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[80] *See Am. W. Bank Members*, 2014 UT 49, ¶ 15 (explaining that damages are an element of a breach of contract claim).

[81] *Cf.* 2 Env't. Ins. Litig.: Law & Prac. § 14:17 (2021) ("[W]here the policyholder is given a defense, the policyholder is receiving exactly what is required under the contract, and cannot have any rights lost merely because a reservation of rights has been issued.").